**Lois M. GRANT, et al., Plaintiffs,**

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, Defendant.**

No. 3:CV–88–0921.

United States District Court,
M.D. Pennsylvania.

Aug. 23, 2000.

Peter Zurflieh, Central Pa. Legal Services, Laurence E. Norton, II, Community Justice Project, Michael Francis Brown, Serratelli, Schiffman, Brown & Calhoon, P.C., Harrisburg, PA, for Lois M. Grant.

Peter Zurflieh, Central Pa. Legal Services, Harrisburg, PA, Fred H. Hait, Carlisle, Louise O. Knight, Lewisburg, PA, Laurence E. Norton, II, Community Justice Project, Michael Francis Brown, Serratelli, Schiffman, Brown & Calhoon, P.C., Harrisburg, PA, for Jamie P. Donnelly.

Peter Zurflieh, Central Pa. Legal Services, Harrisburg, Fred H. Hait, Carlisle, Louise O. Knight, Lewisburg, PA, Laurence E. Norton, II, Community Justice Project, Michael Francis Brown, Serratelli, Schiffman, Brown & Calhoon, P.C., Harrisburg, PA, for Harold Wallace.

J. Justin Blewitt, Jr., Assistant U.S. Attorney, U.S. Attorney's Office, Scranton, PA, Felicia L. Chambers, U.S. Department of Justice, Federal Programs Branch, Civil Division, Sheila M. Lieber, U.S. Dept. of Justice, Civil Division, Carlotta P. Wells, U.S. Department of Justice, Civil Division Federal Programs Branch, Washington, D.C., for Defendant.

## OPINION

MUIR, District Judge.

### I. Introduction.

On August 12, 1988, an amended complaint against the Secretary of the U.S. Department of Health and Human Services was filed on behalf of a class of social security disability claimants whose claims for benefits were denied by Administrative Law Judge Russell Rowell (hereinafter "ALJ Rowell").[1] The core allegation in this matter is that ALJ Rowell was biased generally against disability claimants and his bias deprived them of their right to a full and fair hearing in violation of the Social Security Act and the due process clause of the Fifth Amendment to the U.S. Constitution.

### II. Procedural history.

This case has resulted in four published decisions to this date. The complete relevant background up to 1993 may be found in two of those decisions. *Grant v. Sullivan*, 720 F.Supp. 462 (M.D.Pa.1989); *Grant v. Shalala*, 989 F.2d 1332 (3d Cir. 1993). We will highlight here only the developments which are necessary to dispose of the currently pending cross-motions for summary judgment.

The Plaintiff class in this action consists of

> all claimants for Social Security disability benefits or Supplemental Security Income disability benefits, or both, who have received ... an adverse decision from Administrative Law Judge Russell Rowell on or after January 1, 1985, and all disability claimants whose claims have been ... assigned to ALJ Rowell for a decision.

*Grant v. Sullivan*, 131 F.R.D. 436, 450 (M.D.Pa.1990).

After this action was filed, the Chair of the Social Security Administration Appeals Council initiated an administrative investigation of Plaintiffs' claims. That investigation involved the formation of a special panel which examined records from a statistically significant number of cases assigned to ALJ Rowell.[2] The Plaintiffs

---

**1.** The Social Security Administration subsequently became an independent agency and the proper defendant is now the Commissioner of Social Security.

**2.** Administrative Law Judge Rowell decided a

chose not to participate in those proceedings because of the civil action pending before us. In October of 1990 the special panel issued a report in which it

> concluded that there is no evidence manifested in [ALJ Rowell's] performance as an ALJ to sustain a conclusion that he is generally biased against claimants for disability benefits under the Social Security Act.

(Report of the Special Appeals Council Panel Examining Allegations of General Bias Involving Administrative Law Judge Russell Rowell, No. 001, pg. iii.) Although the report filed by that panel states that it considered the records in the 212 cases as well as "evidence and arguments submitted to the Court by the plaintiffs in *Grant v. Sullivan*," the panel does not identify any such evidence or arguments in its report.

The Acting Chair of the Appeals Council accepted the special panel's conclusions. In reaching that decision the Acting Chair considered not only the records reviewed by the special panel, but also deposition testimony from ALJ Rowell's former coworkers. At the time that the special panel had conducted its investigation and issued its report, the case remained pending in this court.

On May 8, 1991, we issued an order permitting the Defendant to file an interlocutory appeal concerning whether we had the authority to hold a trial on Plaintiffs' claims. In an opinion issued on March 5, 1993, the Court of Appeals for this circuit concluded that we did not have such authority and it remanded the matter for us either to review the administrative record based on the substantial evidence standard or to remand the case to the Social Security Administration for further development of the administrative record.

*Grant v. Shalala*, 989 F.2d 1332 (3d Cir. 1993).

On September 17, 1993, the Plaintiffs filed a motion to remand this matter to the Social Security Administration in order for the Plaintiffs to submit additional evidence for the Defendant to consider and incorporate into the administrative record. On January 26, 1994, we issued an order remanding this matter to the Defendant "for further proceedings on the claims of general bias ...." In that order we stated

> [w]e are of the view that Plaintiffs did not receive a full and fair administrative hearing by the Appeals Council. The Secretary's findings of fact from the hearing are defective because they were rendered in the absence of argument and evidence presented by Plaintiffs on their claims of general bias.

*Grant, et al. v. Shalala*, No. 88–0921 (M.D.Pa. January 26, 1994).

### III. Supplemented administrative record and decision.

A second special panel was formed to conduct the proceedings required by our order of January 26, 1994.[3] On November 13, 1996, the second special panel conducted a hearing at which Michael Brown, Jacqueline Alois, and Peter B. Macky testified. Macky's testimony was based on his review of the conclusions reached by the initial special panel after its examination of the 212 sample cases. In our view it is significant that the initial special panel concluded from its review of those sample cases that it "could not find any basis for *any* conclusion concerning the claimant's racial or ethnic background." (Initial Special Panel Report, pg. 31.)(Emphasis in original.)

In the 212 cases examined by the initial special panel, 113 or 53 .30% were unfavorable to the claimant. Eighty-two of those

---

total of 948 disability cases during the relevant five year period. The total number of cases examined by the special panel was 212, or 22.36% of all cases decided by ALJ Rowell during that period.

**3.** ALJ Rowell died on September 25, 1994.

denials were issued before ALJ Rowell was transferred to Washington, D.C. At the time of that transfer, ALJ Rowell was counseled about his use of excessive and intemperate language in his written decisions. Macky's review of those 82 cases revealed that in 69 of them (or 84% of the 82 pre-transfer denials) the initial special panel itself found that ALJ Rowell had unlawfully determined that the claimant was not credible. Although statistics in and of themselves may have limited probative value, the fact that the information reviewed by the initial special panel revealed such a significant number of unlawful credibility determinations is noteworthy.

Additional evidence supporting the Plaintiffs' claims was presented to the second special panel. Brown and Alois are the primary sources of that evidence. Because the issues in this case rest in large measure upon the substance and credibility of their testimony, we will narrate that evidence at some length.

Brown started working for the Social Security Administration as an attorney advisor in 1977 in Harrisburg, Pennsylvania. He eventually became the supervisor of the other attorneys in that office and worked with all of the Administrative Law Judges in that office. He began working with ALJ Rowell in the fall of 1981 and they became close personal friends. Brown testified before the second special panel on November 13, 1996, to the facts in the following four paragraphs.

ALJ Rowell believed that it was too easy for claimants to obtain Social Security benefits. He was often highly critical of different groups of claimants, such as those who had had automobile accidents, had filed personal injury claims, or had filed worker's compensation claims. ALJ Rowell labeled such claimants as "no-goodniks" and he referred to them in that manner hundreds, if not thousands, of times. (Brown's Testimony, Appearance Held November 13, 1996, at 75.) In a case where ALJ Rowell had decided that the claimant was a "no-goodnik," the instruction sheet to the decision writer from ALJ Rowell might have "no-goodnik" written across the top. (Id., pg.76.) Brown did not know all of ALJ Rowell's criteria for determining who was a "no-goodnik," but certain characteristics put a claimant at risk of being classified as such by ALJ Rowell. Those characteristics were if the claimant were black, Hispanic, a poor white, a union member, obese, allegedly mentally impaired, a workmen's compensation claimant, a controlled substance addict, a Department of Welfare employee, or an accident victim.

ALJ Rowell "believed it was a common occurrence for Hispanics to come into the hearing and pretend they didn't understand English when [ALJ Rowell] believed that they did." (Id., pg.95) He also believed that Hispanics would "fake mental illness ... [as] ... a standard part of every case." (Id., pg.96) In a case involving a worker's compensation claim, "there was usually a manipulation of the earnings to distort the relation between Worker's Comp and this individual's earnings while he was working." (Id., pg.51.) ALJ Rowell would do this deliberately to create a "misimpression." (Id.) ALJ Rowell would use even the most minute discrepancy in information provided by a disfavored claimant to undermine the claimant's credibility. ALJ Rowell would manipulate medical records even when he granted benefits so that it would be easier to terminate those benefits at a later time. (Id., pg.82.) He would attempt "to circumvent" the applicable law. (Id., pg.83.)

The Laura Tate case is a specific instance where ALJ Rowell made judgments against the claimant once he knew merely that she had a number of his disfavored characteristics. Tate was an African-American woman suffering from a mental impairment who had been employed as a janitor at the Department of Welfare. She had also been involved in a number of automobile accidents. ALJ Rowell made determinations regarding Ms. Tate's credi-

bility based on her being in a number of the groups of which he was suspicious. (Id., at 68.) ALJ Rowell denied Ms. Tate's application for benefits.[4] ALJ Rowell made the same type of determination in other cases. On a few occasions he used the word "nigger" and he mentioned to Brown a Senator Bilbow who allegedly introduced a bill in Congress calling for the return of all African–Americans to Africa.

ALJ Rowell assumed that testimony from a "no-goodnik" was unreliable. (Id., pg.78.) If the claim presented by a "no-goodnik" hinged on the claimant's credibility, ALJ Rowell would find the claimant not credible and deny the claim on that basis. (Id., pg.77.) Brown testified that ALJ Rowell "did say many times, you know this is a matter of credibility, and then he'd kind of chuckle, and that's bad for the claimant. It was just—that was a normal part of the discourse." (Id., pg.79.) ALJ Rowell would unfavorably treat a claimant whom he considered to be a no-goodnik for practically any reason. (Id., pg.87.)

At one point during Brown's testimony, a member of the second special panel summarized Brown's testimony in this manner:

Well, I gather then from your testimony that the key determination for [ALJ Rowell] was the so-called no-goodnik determination, that he made that determination at some point on some basis. And then once he made that determination, whatever it was, he sought a means to structure a denial regardless of what obstacles there might be in the record or the case law.

(Id., pg.86–87.) Our review of Brown's testimony indicates that the summary is accurate.

Alois began her career with the Social Security Administration in 1975, and was transferred to the Harrisburg office as a hearing assistant in December of 1981. She was subsequently promoted to the position of decision writer and she wrote decisions for all of the Administrative Law Judges in Harrisburg. She worked with ALJ Rowell for five years. She also testified before the second special panel on November 13, 1996, to the facts in the following three paragraphs.

Alois frequently did not agree with ALJ Rowell's decisions because she "felt that they were not sound legal decisions based on the evidence." (Alois' Testimony, Appearance held November 13, 1996, at 104.) Instead, his decisions were based "[p]rimarily [upon] credibility and [ALJ Rowell's] opinion regarding credibility of the claimant." (Id.) ALJ Rowell "had an idea prior to going into the hearing whether he was going to pay a case or not pay a case because of his separating claimants into different groups." (Id.) She attempted to discuss her concerns with ALJ Rowell until a certain conversation which the ALJ had with her.

During that conversation

he just said let me sit you down and explain to you why I'm not paying this case. He then went on in great detail to explain to me that he had a theory about blacks, Hispanics, poor white people that he had developed while he was in California, and that typically these people are drug addicts or alcoholics or have decided to adopt a lifestyle where they just will not work no matter what, that they preferred living on public monies, including welfare payments, Worker's Compensation if they could get it if they had a work history, and Social Security Benefits. He said that he did not care what the evidence showed, that he did not care if his Decision was reversed by the Appeals Council or the Courts, that

---

4. Brown represented Ms. Tate after he left employment with the Social Security Administration and entered private practice. He appealed the denial on behalf of Tate and she subsequently obtained the benefits which ALJ Rowell had denied. The Defendant cites those facts, as well as the fact that Brown apparently never complained about ALJ Rowell while Brown worked for him, as reasons to discount Brown's credibility.

he had no intention of paying the case based on what he had.

(Id., pg.105–06.)[5]

Alois' testimony as to ALJ Rowell's views mirrored that of Brown when she stated

I feel very strongly based on my discussions with [ALJ Rowell] and based on my sampling of his work that he had his mind made up, and that people fit into two categories. They were either no-goodniks—chronic no-goodniks or upstanding citizens who happened to have had a bad turn of luck and had an injury and were truly disabled. They were either of those categories, and the decision regarding paying of benefits depended upon which category you fell into.

(Id., pg.115.) That testimony had been previously provided by Alois in a deposition. During the opening statement provided by Plaintiffs' counsel at the November 13, 1996 proceeding, before Alois repeated that testimony, one of the panel members acknowledged that those statements were "very probative." (Id., pg.30.)

5. The second special panel was initially concerned about a potential discrepancy between Alois' testimony at the November 13, 1996, proceeding and her prior deposition testimony. That discrepancy concerned the individuals with whom she had discussed that conversation. The deposition question posed to her regarding that information was one part of a compound question. The second part of the compound question concerned the names of other decision writers who were employed in the Harrisburg office after the discussion took place. Alois responded to the compound question with a single answer. In her response she first named the two decision writers with whom she discussed the conversation with ALJ Rowell and she proceeded to name all of the decision writers whom had been employed in the Harrisburg office, including those whose employment there began after the conversation in question. During her testimony on November 13, 1996, Alois explained that she had discussed the conversation with only the first two individuals named in her deposition answer and that she named the other individuals only in response to the second part of the compound question. It

Alois further testified that at one point all of the decision writers in the Harrisburg office began writing ALJ Rowell's denials in such a manner that his justification for finding the claimant not credible would be very brief and the objective evidence supporting the claimant's credibility would be included.[6]

The evidentiary record developed before the Social Security Administration consists of not only the testimony of Brown and Alois, but also the initial special panel's assessment of the 212 sample cases and the testimony of three other individuals. That sample showed that ALJ Rowell had awarded benefits in 45.8% of those cases. The three other individuals who testified on behalf of the Plaintiffs were Administrative Law Judge Garth Stephenson[7] (hereinafter "ALJ Stephenson"), David Koplow, and Martin Schreffler.

ALJ Stephenson testified in a deposition taken in 1989 that ALJ Rowell had once said to him "[t]he issue is credibility. And that's bad for the claimant." (Stephenson Deposition, Administrative Record Ex. 83, pg. 12.)

appears obvious that Alois could not have discussed the conversation she had with ALJ Rowell with individuals who were not yet employed in her office. Construing her deposition answer in the manner construed by the panel is erroneous and Alois' explanation dispels any purported discrepancy. The panel appeared to be satisfied with her explanation and it did not pursue the matter. (Id., pg.106–08.) Nonetheless, the panel used that as a basis to discount Alois' credibility.

6. The panel on November 13, 1996, posed a few questions to Alois implying that her testimony provided on that date regarding the modification of decisions written for ALJ Rowell was not consistent with the testimony on that subject which she had provided in her earlier deposition. However, there were very few questions along those lines and the panel did not note any specific inconsistency. The panel used this purported inconsistency as another basis to discount Alois' credibility.

7. Brown and Stephenson became partners in a law firm when they entered private practice.

Koplow was a clinical professor at Georgetown Law School in August of 1988 and his students represented Social Security claimants who appeared before the Social Security Administration's Administrative Law Judges in the Washington office. ALJ Rowell was transferred in January of 1988 from the Social Security Administration's Harrisburg office to its Washington office. Koplow visited ALJ Rowell once in order to get "pointers or tips" for his students who might later appear before ALJ Rowell. (Koplow Deposition, Administrative Record Ex. 82, pg. 5.) In that deposition Koplow read from the extensive notes which he had written during his interview with ALJ Rowell. One of Koplow's observations in his notes was that

> when Judge Rowell talks about claimants, all the stories and all the hypotheticals concern claimants and representatives who exaggerate or invent impairments. He tells no stories about pain minimizers or about truly disabled people, only about those [who] are trying to abuse the system.

(Id., pg.20.) One direct quotation from ALJ Rowell in Koplow's notes was "[m]any psychiatric examinations are a farce." (Id., pg.15.)

During the presentation of their evidence before the second special panel on November 13, 1996, the Plaintiffs also presented excerpts from ALJ Rowell's decisions in which ALJ Rowell had used extreme language when explaining why he found the claimant to be not credible.

The first quotation is from ALJ Rowell's decision in the Laura Tate case. ALJ Rowell wrote that

> [a]lthough the shenanigans of the claimant have effectively frustrated and prevented the undersigned from more fully developing the evidence in this case, the undersigned does draw the reasonable inference from the claimant's refusal to cooperate by providing the requested

series of automobile accidents for the primary if not the sole purpose of collecting insurance monies and other financial benefits. The fact that she would defraud insurance companies in such a manner establishes that she would not hesitate to lie in regard to her impairments, restrictions and limitations in regard to her claim for Social Security benefits. As noted in the undersigned's letter to the claimant's counsel, these are all reasonable inferences that the undersigned can make as a designated trier of fact. . . . The claimant is found to be a prevaricator, is manipulative and is a malingerer.

In the case of B.L.H.[8] he wrote

> [h]er lifestyle can be described as having adjusted to a no-work lifestyle without any productive activity either in or out of the home, whereby she stays home mostly lying down and watches television and receives help with household chores from her daughter. The secondary gains accruable to the claimant's ongoing efforts to obtain disability benefits, compounded by her no-work lifestyle and protestation of pain and limitations, unsupported by the objective medical evidence adequately support the conclusion that the claimant's testimony is not credible. Also, it is concluded that she is manipulative and a malingerer.

In other cases, ALJ Rowell did not believe a claimant's testimony because he or she appeared too uncomfortable during the hearing. In the case of L.A.Z. he wrote

> [i]n addition, the undersigned Administrative Law Judge notes that the claimant demonstrated considerable manipulative behavior during the course of the hearing. The claimant was noted as wearing a high-necked cervical collar, repeatedly sat and stood during the course of the hearing, and presented most of her testimony during periods

---

8. In presenting this evidence to the second special panel, the Plaintiffs did not identify the claimants involved in these cited cases by name but only by initials.

when she was standing. After careful observation of the claimant, her conduct is construed as manipulative in nature and designed to perpetrate an impression of severe and intractable symptomatology, which is simply not supported by the medical record. Therefore, the claimant's testimony is found not credible and not supported by the medical evidence.

ALJ Rowell also refused to accept the conclusions of the claimant's treating physician based solely on a finding that the claimant was not credible. For example, in the case of L.T. he wrote

[t]he undersigned notes that the last-minute report of Mr. Anderson supports the claimant's claim for benefits. In this regard, it is concluded that no weight will be given to the opinions advanced by Mr. Anderson, and his views are rejected. It is evident that Mr. Anderson's views and opinions are based to a large extent upon his assessment of full credibility to the claimant's description of multiple aches, pains, limitations, and impairments, many of which, if not most, are not supported by objective medical evidence, and many are contrary to objective medical data. In brief, it appears that Mr. Anderson has been had, and obviously, has been manipulated by a scheming, manipulative, malingering, and prevaricating claimant into expressing views and opinions based largely upon assessment of full credibility of her representations and to her demonstrations and to testing procedures largely under her control.

In the case of C.S., ALJ Rowell wrote [a]nd finally, it is concluded that Dr. Hawk has relied primarily on claimant's representations, and he has given full credibility thereto. Accordingly, it is concluded that Dr. Hawk has been manipulated by the claimant, and Dr.

Hawk's impression of inability to engage in work activity is rejected and will receive no weight.

(Appearance Held November 13, 1996, pgs. 34–38.) The Plaintiffs identified and cited in the record literally dozens of cases, out of an additional 100 to 150 cases which they independently reviewed, in which ALJ Rowell had used such language. (Id., at 34–35.) [9]

The second special panel acknowledged that the portions of those cases which were read into the record by Plaintiffs' counsel were "again, very probative." (Id., pg.38.) The second special panel inquired as to whether those decisions were in the record in their entirety and when Plaintiffs' counsel replied that only the excerpts were in the record, one member of the panel expressed a desire to obtain and review those decisions. The record also reflects that the government had been provided the names of the claimants involved in those cases.

On November 6, 1998, the second special panel issued a report in which it concluded that the record did not support the Plaintiffs' claims that ALJ Rowell had been biased. The second special panel framed the precise issue which it resolved as follows:

Did Administrative Law Judge Russell Rowell *exhibit* general bias against the named class of Social Security and Supplemental Security Income claimants who came before him, thereby depriving these plaintiffs of their constitutional and statutory right to a fair hearing?

(Report of the Special Appeals Council Panel Examining Allegations of General Bias Involving Administrative Law Judge Russell Rowell, Pursuant to the Instructions of the January 26, 1994 U.S. District Court Remand Order, pg. 4)(Emphasis added.) The Executive Summary of that report states that "the Panel has conclud-

---

9. The probative excerpts from those cases were cited in the Plaintiffs' proposed findings of fact for the administrative proceedings. The Plaintiffs submitted those proposed find-ings to the second special panel at the proceedings conducted on November 13, 1996. That evidence has not been cited in any administrative decision.

ed that the plaintiffs have not demonstrated that Administrative Law Judge Russell Rowell *exhibited* general bias against claimants for disability benefits under the Social Security Act." (Id., pg.iii.)(Emphasis added.) The second special panel apparently reasoned that in order for the Plaintiffs to exhibit such bias and

> sustain the allegations presented, it must be shown that the decisional language documents a predisposed general bias and not merely the incorrect or overzealous interpretation and application of principles, techniques and methods which are lawfully used by administrative law judges in the evaluation of evidence in the record.

(Id., pg.11–12.)

In reaching its conclusion, the second special panel completely rejected Brown's and Alois' testimony. With respect to Brown's testimony, the second special panel stated

> [t]he Panel finds that this testimony, in the context of the entire documentary and testimonial record, affords little probative support for the plaintiffs' allegations of general or extensively patternized bias.

(Id., pg.19.) The panel also stated that

> [t]he veracity of much of Michael Brown's testimony concerning his conversations with ALJ Rowell can not be confirmed or denied because of the death of ALJ Rowell and the lack of any other contemporaneous witness corroboration.

(Id., pg.24.) With respect to Ms. Alois' testimony, the second special panel stated that it

> finds Ms. Alois' testimony less than fully credible and insufficient to establish the particulars of the crucial conversation which she described in the deposition and oral testimony. Although Ms. Alois essentially shared Mr. Brown's view of Judge Rowell's decisionmaking process as being guided by unfair denial of claimants perceived as "no-goodniks,"

much of her testimony on the issue is speculative opinion which was simply not confirmed by the Panel's random sample review, incapable of refutation by the deceased Judge Rowell, and uncorroborated even as opinion evidence by anyone other than Mr. Brown.

(Id., pg.23.)

On January 4, 2000, the Chair of the Appeals Council issued the Defendant's final decision in which she adopted the second special panel's conclusions. That decision has been presented to us in the parties' cross-motions for summary judgment for review.

In her decision the Chair of the Appeals Council stated

> that in order to make a finding that ALJ Rowell exhibited bias, it must be "proven that all or most of the judges' (sic) decisions manifest such wrongful or inappropriate predispositions." Abstract allegations concerning an ALJ's state of mind, without concrete evidence, are insufficient to establish a finding of "general bias."

(Determination of Rita S. Geier, Associate Commissioner for Hearings and Appeals and Chair of the Appeals Council, pgs. 16–17.) She adopted all of the second special panel's evidentiary findings as well as that panel's characterization of Brown's and Alois' testimony as "speculative." She explicitly rejected the Plaintiffs' contention that the conclusions of the second special panel did not take into consideration all of the evidence in the record.

On March 16, 2000, we received the Supplemental Administrative Record which had been amassed after we remanded the case. On April 3, 2000, we issued an order requiring the parties to submit a status report because the Clerk of Court had closed this case pursuant to our order of January 26, 1994. In their joint status report filed on April 20, 2000, the parties convinced us that jurisdiction in this court had been retained pursuant to 42 U.S.C. § 405(g).

On April 27, 2000, we issued an order requiring the parties to file cross-motions for summary judgment. The Plaintiffs filed their motion for summary judgment with a supporting brief on May 31, 2000. After receiving an extension of time in which to do so, the Defendant filed a motion for summary judgment with a supporting brief on June 8, 2000. The Defendant's brief in opposition to the Plaintiffs' motion was filed on June 19, 2000. The Plaintiffs' brief in opposition to the Defendant's motion was filed on the following day. The parties filed their reply briefs on July 6, 2000, thereby ripening the cross-motions for summary judgment.

## IV. Standards of review.

Our review of this matter is governed by 42 U.S.C. § 405(g) and it is less than plenary. *Grant v. Shalala*, 989 F.2d 1332, 1338 (3d Cir.1993). Deciding this case on cross-motions for summary judgment is appropriate because we lack "the authority to conduct a trial and make independent findings of fact concerning the alleged bias of ALJ Rowell." *Id.*, at 1346.

A decision of the Secretary which is supported by substantial evidence must be affirmed. *E.g., Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)(quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Substantial evidence exists only "in relationship to all the other evidence in the record," *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981), and it "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Court of Appeals for the Third Circuit has stated

[t]his oft-cited language [describing the standard of substantial evidence] is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion .... The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1153 (3d Cir.1983)(quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983) (citations omitted)). We will apply that standard to the parties' cross-motions for summary judgment.

Our initial task in reviewing the merits of those motions is to determine the specific standard of review regarding ALJ Rowell's alleged bias. Although the parties agree that the fundamental issue concerns that bias, the parties do not agree upon the criteria we should apply to determine whether the Plaintiffs are entitled to relief. Relevant regulations have been promulgated which serve as an appropriate starting point.

Title 20 C.F.R. §§ 404.940 and 416.1440 (1994), each of which is entitled "Disqualification of the administrative law judge," states in relevant part that "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party ...." The Court of Appeals for the Third Circuit applied those regulations in the case of *Ventura v. Shalala*, 55 F.3d 900 (3d Cir.1995).

In *Ventura* the claimant contended that he did not receive a full and fair hearing because of the ALJ's bias or prejudice. The court initially noted that

> [t]he right to an unbiased ALJ is particularly important because of the active role played by ALJs in social security cases. *See Hess,* 497 F.2d at 840–841. ALJs have a duty to develop a full and fair record in social security cases. *See Brown v. Shalala,* 44 F.3d 931, 934 (11th Cir.1995); *Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981). Accordingly, an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits. *Hess,* 497 F.2d at 841. In *Hess* we reasoned that "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." *Id.* at 840.

*Id.* at 902.[10] In concluding that Ventura was entitled to a new hearing because of the manner in which the ALJ had treated him and his representative at the hearing, the court noted its prior holding and reasoning in the case of *Hummel v. Heckler,* 736 F.2d 91 (3d Cir.1984).

In *Hummel* the court

> stressed that even if the record was totally devoid of evidence supporting a finding of disability, "the bias of the adjudicator might still be a ground for setting aside a determination adverse to the claimant, for we have repeatedly held that in Social Security disability claim hearings the administrative law judge has an affirmative obligation to

assist the claimant in developing the facts."

*Ventura,* 55 F.3d at 904 (quoting *Heckler,* 736 F.2d at 92). The court further stated that "[i]t is difficult to conceive of how a judge biased against disability claims or claimants could conscientiously perform that duty." *Id.*

■ Based on the pertinent regulations and those cases, we are of the view that the standard applied by the second special panel, adopted in the final decision, and presented to us by the Defendant is not appropriate. That standard used by the second special panel requires an *exhibition* of ALJ Rowell's bias in his written decisions. There is no such requirement in the controlling law. The governing standard requires us to decide whether ALJ Rowell harbored any bias which rendered him unable to fulfill his duty to develop the facts and decide impartially.[11] *See* 20 C.F.R. §§ 404.940, 416.1440; *Ventura, supra.; Hummel, supra.* In evaluating the Plaintiffs' due process claims, it is necessary to apply a standard which focuses on whether the procedures employed by ALJ Rowell at the Plaintiffs' administrative hearings were fair. The fairness of those procedures involves matters which are completely independent of the results of those proceedings. *See,* Hummel and Heckler, supra. Those matters encompass the manner in which ALJ Rowell assessed the credibility of the claimants appearing before him.

### V.  Review of the merits of the pending motions.

■ The "Determination of Rita S. Geier, Associate Commissioner for Hearings and Appeals and Chair of the Appeals Council" concludes that "the review of the

---

**10.** Citing *Hess v. Secretary of Health, Education and Welfare,* 497 F.2d 837, 840 (3d Cir.1974).

**11.** We note that the second special panel itself appears to have violated its duty to develop the facts fully when it identified specific evidence presented by the Plaintiffs (i.e., the case

excerpts read by Plaintiffs' counsel in which ALJ Rowell used harsh language) as "very probative," and yet it apparently failed to pursue any additional inquiry into those cases. The second special panel failed even to mention that evidence in its report.

record demonstrates that *ALJ Rowell did not act with any bias in undertaking his responsibilities regarding hearing and deciding Social Security disability claims.*" (Determination of Rita S. Geier, Associate Commissioner for Hearings and Appeals and Chair of the Appeals Council, pg. 26.)(Emphasis added.) In order for us to grant the Defendant's motion for summary judgment, that conclusion is required to be supported by substantial evidence.

Our analysis of the merits begins with the observation that the evidence submitted by the Plaintiffs constitutes practically the entire administrative record. The only evidence in the record which was not submitted by the Plaintiffs are the findings of the initial special panel based upon its review of the 212 sample cases decided by ALJ Rowell. Those findings were made in the form of various statistics. However, the initial special panel itself found that those statistics failed to support any conclusion regarding ALJ Rowell's alleged racial bias. (Initial Special Panel Report, pg. 31.)

Based on the fact that the Plaintiffs have been the principal source of the evidence, the administrative decisions in this case primarily address evidence which tends to establish ALJ Rowell's bias as alleged by the Plaintiffs. The Defendant's ultimate decision that the Plaintiffs are not entitled to any relief is based exclusively on the repeated finding, for various reasons, that the evidence submitted by the Plaintiffs is not of value.

If we conclude that the evidence submitted by the Plaintiffs has been improperly discounted and should be considered, the Plaintiffs prevail. That result follows because there is no countervailing evidence in the record to consider. We next examine the administrative evidentiary record.

The Plaintiffs presented evidence which has not been considered in either the second special panel's report or the final determination adopting that report. The testimony provided by ALJ Stephenson and by Professor Koplow is not addressed in any significant manner in either of those documents. Although there are not many relevant facts to be gleaned from their testimony, those which are relevant are of great significance. That is so because they corroborate the testimony of Brown and Alois which the Defendant cites as completely uncorroborated and not worthy of belief.

ALJ Stephenson testified in his deposition of September 19, 1989, that ALJ Rowell once said to him "[t]he issue is credibility. And that's bad for the claimant." (Stephenson Deposition, Administrative Record Ex. 83, pg. 12.) That is a confirmation of Michael Brown's testimony that ALJ Rowell "did say many times, you know this is a matter of credibility, and then he'd kind of chuckle, and that's bad for the claimant. It was just—that was a normal part of the discourse." (Id., pg.79.) Brown's testimony was provided initially in his deposition on April 3, 1991, and again directly before the second special panel on November 13, 1996. Because Brown's testimony was buttressed not only by ALJ Stephenson's but also Alois', it is entitled to far more weight than that placed upon it by the Defendant.

Professor Koplow's testimony and notes are also significant because they further corroborate and bolster the testimony of both Brown and Alois.

None of the written administrative decisions cite the fact that the initial special panel found so many of ALJ Rowell's written opinions (84% of his pre-transfer denials) within the 212 case sample to contain "credibility determinations by the ALJ [which] might be considered problematic." (Initial Special Panel Report, pg. 24.) Thirty-two of those cases involved "an undoubted misapplication of the law." (Id., pg.27.) In light of the other evidence adduced by the Plaintiffs, that statistic should have been addressed in some manner in the administrative decisions. At the very least; it tends to corroborate the testimony provided by Brown, Alois, Ste-

phenson, and Koplow. While their testimony provides the reasons for the alleged bias, the statistics may be read as revealing the results of that bias.

Similarly, none of the administrative decisions address the testimony regarding ALJ Rowell's deliberate manipulation of the medical records and the period for which benefits would be paid to create a "misimpression." (Brown's Testimony, Appearance held November 13, 1996, at 75.)

Another glaring deficiency is the failure of the second special panel to mention in its written decision the specific evidence which one panel member acknowledged to be "very probative." That evidence consists of the excerpts from ALJ Rowell's decisions which were read into the record by Plaintiffs' counsel in which ALJ Rowell had used extreme language when explaining why he found the claimants to be not credible. (Appearance held November 13, 1996, pgs. 34–38.) Sufficient information regarding those cases was provided to the Defendant for any additional investigation which the Defendant felt necessary. The second special panel recognized the evidence as "again, very probative." (Id., pg.38.) However, that evidence is not mentioned in any written administrative decision.

Additional evidence which a member of the second special panel recognized as "probative" was Alois' testimony regarding her conversation with ALJ Rowell. However, at some point between the November 13, 1996, hearing and the written decision, the panel reversed itself summarily and found that the testimony was not credible. The reasons presented for that reversal are more thoroughly discussed below. Those reasons are not persuasive.

Furthermore, no administrative decision acknowledges the fact that Brown pointed to the Tate case as a specific example in which the outcome had been determined by ALJ Rowell based on his predispositions before the hearing. Both Alois and Brown testified that it was common for ALJ Rowell to decide before a hearing that a claimant was a "no-goodnik" based upon his predispositions, use that decision to conclude that the claimant was not credible, and deny the claim because of that conclusion. Both Brown and Alois testified to that process. The Tate case is a concrete example of that process at work.

The Court of Appeals for the Third Circuit has stated that

> [t]he Secretary may properly accept some parts of the . . . evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.

*Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir.1994)(citing *Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir.1983)). The Defendant's failure to recognize and consider the evidence noted above is erroneous.

The Plaintiffs describe Alois' testimony regarding her specific conversation with ALJ Rowell as the 'keystone' of their case. It could well be argued that her testimony in and of itself constitutes substantial evidence justifying the relief sought by the Plaintiffs. However, the testimony of both Alois and Brown was entirely discounted in the administrative decisions for various reasons. We are of the view that the testimony provided by Brown and Alois is so probative on the question of ALJ Rowell's bias that the Plaintiffs would have prevailed in the administrative proceedings were it not for the discounting of their testimony by the second special panel.

In her final decision, the Acting Chair states

> [w]ith respect to the testimony of Michael Brown and Jacqueline Alois, the Panel noted in its report that both witnesses provided speculative testimony concerning Judge Rowell's alleged patterns of bias against certain groups of claimants without supporting evidence. The veracity of much of Brown's testimony concerning his conversations with Judge Rowell cannot be verified or de-

nied through independent means and because of the unfortunate death of Judge Rowell. ... In addition, the testimony of Jacqueline Alois which plaintiffs argue corroborates the testimony of Brown, is in itself inconsistent.

(Determination of Rita S. Geier, Associate Commissioner for Hearings and Appeals and Chair of the Appeals Council, pg. 24.) It bears noting that ALJ Rowell had ample opportunity to respond to the Plaintiffs' allegations when the Plaintiffs issued him a notice of deposition. ALJ Rowell sought and obtained an order preventing his testimony from being taken. The fact that ALJ Rowell successfully resisted the Plaintiffs' discovery attempts, regardless of the propriety of the discovery sought, should not be held against the Plaintiffs. In addition, there is nothing speculative about the significant aspects of the testimony provided by Alois and Brown.

The purported reasons in the above quotation to discredit Brown and Alois, and the additional purported reasons noted in the footnotes above, are entirely devoid of merit. The quoted decision is consistent with the other written administrative decisions in that they all reflect a strenuous effort by the decision makers to grasp any reason whatsoever as a foothold to discount the credibility of Brown and Alois. A fair consideration of the circumstances underlying each and every purported reason not to believe their testimony indicates that no valid reason exists. The great lengths to which the decision makers have gone to discredit Brown and Alois stand in stark contrast to the obvious, voluminous evidence which corroborates, supports, and augments their testimony.

The testimony of Brown and Alois was improperly rejected. The Defendant erroneously failed to consider the substantial evidence which corroborates and confirms their testimony. *See Burnett v. Commis-*

*sioner,* 220 F.3d 112, 2000 WL 1025673 (3rd Cir.(N.J.)), *8 (ALJ is required to address evidence bolstering witness's credibility)(citing *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir.1983)(ALJ must consider and weigh all evidence before him)). In addition, the characterization of their testimony as "speculative" is untenable. In essence, the Commissioner has "ignore[d], or fail[ed] to resolve, a conflict created by countervailing evidence." *See Wallace v. Secretary of Health and Human Services,* 722 F.2d 1150, 1153 (3d Cir.1983)(quoting *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983) (citations omitted)).

Because of those errors, we are of the view that the Determination of Rita S. Geier, Associate Commissioner for Hearings and Appeals and Chair of the Appeals Council is not supported by substantial evidence. The only conclusion to be drawn after considering all of the evidence in the record is that ALJ Rowell harbored biases which rendered him unable to fulfill his duty to develop the facts and to decide cases fairly. Those biases were clearly manifested in the manner in which ALJ Rowell made credibility determinations.[12] We will deny the Defendant's motion for summary judgment and we will grant the Plaintiffs' motion for summary judgment.

In their motion the Plaintiffs request us to 1) conclude that the Commissioner's decision is not supported by substantial evidence; 2) reverse the Commissioner's decision; and 3) order that class members whose claims were denied by ALJ Rowell be provided new hearings on their claims for disability benefits.

The Plaintiffs have been seeking relief in this case for 12 years. We remanded this case in January of 1994. The Defendant did not make its subsequent administrative

---

12. Although we have explicitly rejected the standard proposed by the Defendant to determine whether ALJ Rowell was biased (i.e., whether his decisions exhibited such bias), we are of the view that even if we applied that standard the Plaintiffs would be entitled to relief. The frequency of, and hostility expressed in, ALJ Rowell's unlawful credibility determinations exhibits the biases alleged by the Plaintiffs.

decision for an additional 6 years. The Court of Appeals for the Third Circuit "has noted in the past [its] frustration with delays in disability determinations by the Social Security Administration." *Plummer v. Apfel*, 186 F.3d 422, 435 (3d Cir. 1999).

We are troubled by a number of procedural irregularities which have occurred in this case. ALJ Rowell was transferred from the Social Security Administration's Harrisburg office to its Washington office on the Friday preceding a hearing scheduled for the following Monday on the Plaintiffs' motion for contempt because of the Defendant's failure to produce documents in the course of discovery. The documents were never found. An investigation by the U.S. Attorney's Office concluded that ALJ Rowell had burned most, if not all, of the documents.

When this case was remanded in January of 1994, the Appeals Council Chair appointed a Special Master to preside over the reception of evidence from the Plaintiffs. That Special Master met with Jackie Alois *ex parte* and asked her 1) how she "could have said those things about Judge Rowell," and 2) if she "realize[d] that her deposition was very damaging." In an affidavit, Alois stated that she felt the Special Master was pressuring her to recant her testimony. (Plaintiffs' Corrected Brief in Support of Their Motion for Summary Judgment, pg. 6, n. 4.) The Plaintiffs requested the Special Master to disqualify herself, but she refused to do so. The second special panel ultimately issued an order disqualifying that Special Master.

Although we do not view those irregularities as being relevant to the merits of this action, we do consider them to be relevant to the treatment that this case and the treatment which these Plaintiffs have received from the Social Security Administration. We will minimize the opportunity for such events to be repeated and order that new hearings be held in the cases involving class members whose claims for disability benefits were denied by ALJ Rowell.

### VI. Conclusions of Law.

1. The Defendant's final administrative decision, embodied in the "Determination of Rita S. Geier, Associate Commissioner for hearings and Appeals and Chair of the Appeals Council," is not supported by substantial evidence.

2. ALJ Rowell harbored biases which rendered him unable to fulfill his duty to develop the facts and to decide cases fairly.

3. The Plaintiffs' rights to full and fair hearings with respect to applications for Social Security disability benefits were violated as a result of ALJ Rowell's biases.

4. There is no material fact in dispute and the Plaintiffs are entitled to judgment as a matter of law.

An appropriate order will be entered.

### ORDER

1. Defendant's motion for summary judgment (Document 280) is denied.

2. Plaintiffs' motion for summary judgment (Document 275) is granted.

3. The Defendant shall, with all due speed, schedule and conduct new administrative hearings in the cases of each member of the Plaintiff class whose claim for disability benefits was denied by ALJ Rowell.

4. The Clerk of Court shall close this case.