Richard MANIACI

v.

KENNETH S. APFEL, Commissioner
of Social Security

No. Civ.A. 97–1230.

United States District Court,
E.D. Pennsylvania.

Nov. 12, 1998.

Richard P. Weishalpt, Community Legal Services, Inc., Philadelphia, PA, for Plaintiff.

Patricia M. Smith, Special Assistant U.S. Attorney, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

DUBOIS, District Judge.

## I. INTRODUCTION

Plaintiff, Richard Maniaci, brought this action under 42 U.S.C. § 405(g), appealing the denial of his claim for Supplemental Security Income ("SSI") benefits by defendant, Kenneth S. Apfel, Commissioner of Social Security. Under 42 U.S.C. § 1383(c)(1)(B)(3) (1997), such decisions of the Commissioner covering SSI benefits are subject to judicial review.

Currently before the Court are the parties' Motions for Summary Judgment. Magistrate Judge Arnold C. Rapoport, in a Report and Recommendation dated July 29, 1998, recommended that defendant's Motion for Summary Judgment be granted and that plaintiff's Motion for Summary Judgment be denied. For the reasons set forth below, the Court will reject the Report and Recommendation of Magistrate Judge Rapoport, deny defendant's Motion for Summary Judgment and deny plaintiff's Motion for Summary Judgment. The decision of the Administrative Law Judge Hazel C. Strauss ("ALJ") will be vacated and the Court will remand

the case for further development of the record.

## II. FACTS

On September 23, 1987, plaintiff, a fifty-seven year old taxicab driver, was involved in the first of a series of automobile accidents. Plaintiff was treated for orthopedic injuries and psychiatric problems, but continued to operate a taxicab. On January 16, 1991, plaintiff was involved in a second automobile accident, resulting in more severe orthopedic injuries and several weeks of treatment. On August 8, 1991, plaintiff was involved in a third motor vehicle accident, aggravating injuries suffered in the previous accidents. On May 29, 1992, plaintiff was involved in his fourth automobile accident, again sustaining orthopedic injuries. Plaintiff sought treatment at Philadelphia Ambulatory Care after each accident. Additionally, on September 11, 1992, plaintiff underwent successful quintuple arterial bypass surgery.

## III. PROCEDURAL HISTORY

Plaintiff applied for SSI benefits on October 6, 1992, alleging disability since February 15, 1991 due to his heart condition. This application was denied, and plaintiff did not seek review of the decision. On June 24, 1993, plaintiff again applied for SSI benefits, asserting benefits eligibility due to his cardiac and orthopedic disorders. Again, he was denied benefits. Plaintiff then requested and was granted an administrative hearing, which was held on June 21, 1995. Dr. Brad Rothkopf, an expert in cardiology, Dr. Morris Rubin, a vocational expert, and plaintiff testified at the hearing. R. at 48. In an opinion dated October 13, 1995, the ALJ denied plaintiff's application for SSI benefits, finding that plaintiff did not have an impairment severe enough to warrant the award of benefits, and that plaintiff's complaints of pain were not credible. R. at 28–29. The ALJ noted that plaintiff was injured severely enough to prevent him from returning to his former position, but, based upon the testimony of the vocational expert, she concluded

that plaintiff could still perform work in a position which did not entail heavy lifting, and which permitted him to stand or remain seated when physically necessary. *Id.*

Plaintiff filed a timely request for review by the Appeals Council. The request was denied on December 20, 1996.

The instant action was filed on February 19, 1997. The Commissioner of Social Security, Kenneth Apfel ("Commissioner"), was served with process on August 13, 1997. An answer was filed on January 12, 1998.[1] On May 4, 1998 plaintiff filed a Motion for Summary Judgment. The Commissioner filed a Motion on May 19, 1998. In his Motion for Summary Judgment, plaintiff claimed that the ALJ failed to develop the record adequately regarding orthopedic impairments, and improperly determined that plaintiff's complaints of pain were not credible, the cumulative effect of which was to deny him a full and fair, hearing on the merits of his claim. In particular, plaintiff argued that an adequately developed record would demonstrate that the severity of his condition meets or is medically equivalent to the orthopedic impairment described at 20 C.F.R. Part 404, Subpart P, Appendix 1, section 1.05(C) ("Listing 1 .05(C)").[2]

The Court referred the matter to United States Magistrate Judge Arnold C. Rapoport for a report and recommendation pursuant to 28 U.S.C. section 636(b)(1)(B). Judge Rapoport issued a Report and Recommendation on July 29, 1998.

Citing the medical records provided by plaintiff's physicians, and the testimony of the medical expert, a cardiologist, at the administrative hearing, Judge Rapoport found that the record supported the ALJ's determination that plaintiff's cardiac condition had improved substantially since his quintuple by-pass surgery, and did not preclude plaintiff from performing the exertional requirements of light work. Magistrate Judge's Report at 18. Thus Judge Rapoport concluded there was substantial evidence to support the ALJ's determination that plain-

---

1. In an order entered on December 29, 1997, the Court granted Defendant's uncontested Motion to Extend Time to Respond to Complaint.

2. See Section V, *infra*, for a discussion of Listing 1.05(C).

tiff's cardiac condition was not disabling. As to plaintiff's orthopedic problems—neck and back pain, and left foot drop—Judge Rapoport concluded there was substantial evidence to support the ALJ's conclusion of "not disabled." Specifically, the ALJ determined that, because plaintiff's foot drop was correctable with a molded ankle-foot orthodic ("MAFO"), it could not be the basis for a disability finding. He also concluded that, because there was no "significant loss of motion in the spine" as required by Listing 1.05(C), plaintiff was not entitled to benefits for his neck and back impairments. Magistrate Judge's Report at 19. Concerning plaintiff's complaints of pain, Judge Rapoport stated that inconsistencies in plaintiff's testimony supported the ALJ's finding that plaintiff was not credible to the extent he claimed he was incapable of pursuing gainful employment. Magistrate Judge's Report at 21–22.

Based on the above analysis, Judge Rapoport recommended that the Court grant defendant's Motion for Summary Judgment and deny plaintiff's Motion for Summary Judgment. Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation on August 11, 1998. Plaintiff repeated his claim that the ALJ made legally impermissible inferences and factual errors that prevented the development of an impartial record. Specifically, plaintiff argued that the following errors were made at the administrative hearing: the ALJ's determination that he did not receive medical attention after 1993 or 1994 was incorrect; the ALJ's inference that plaintiff's complaints of pain were not credible because he was treating his pain with non-prescription medication was improper; the ALJ refused to evaluate fairly the status of Dr. John Pettineo, one of plaintiff's cardiologists; and the ALJ's refusal to apply Listing 1.05(C) of the Code of Federal Regulations to plaintiff's condition was legally incorrect. Objections at 6. Plaintiff's principal argument is that Judge Rapoport erred in his recommendation because the ALJ did not adequately develop and analyze the record of plaintiff's orthopedic condition. Objections at 9–10.

## IV. STANDARD OF REVIEW

The Report and Recommendation of Judge Rapoport are subject to de novo review by the Court, as they address dispositive issues. Fed.R.Civ.P. 72(b). The Court reviews the decision of the ALJ to determine whether it is supported by "substantial evidence."[3] 42 U.S.C. § 405(g) (1997). In making this determination, however, the Court must first be satisfied that the plaintiff has had a full and fair hearing under the regulations of the Social Security Administration and in accordance with the beneficent purposes of the act. *Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 755 (2d Cir. 1982) (citation omitted). *See also, Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir.1995) (noting that due process requires full and fair hearing).

The need to determine the fairness of plaintiff's hearing stems from its non-adversarial nature. The Social Security Administration is not represented at the hearing and the ALJ has an affirmative duty to develop the record, even when, as here, the claimant is represented by counsel. *See Davis v. Sec'y of Health and Human Services*, No. 3:CV–93–1324, 1995 WL 351093 at *6 (M.D.Pa. March 21, 1995). *See also Ventura*, 55 F.3d at 902, 904 (claimant represented by "lay representative;" court refers to duty to develop the record). *Cf. Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996) (stating that whether claimant is represented by counsel does not affect ALJ's duty to develop the record, but instead underscores the importance of that duty). This duty arises from Section 404.1512, Chapter 20, of the Code of Federal Regulations, which mandates a review of the claimant's complete medical record before a determination of benefits eligibility is made. *See* 20 C.F.R. §§ 404.1512(d)–(f) (1997) (discussing duty to complete medical record

---

3. The ALJ uses a five-step analysis to determine whether a claimant is entitled to SSI benefits: (1) whether the claimant is working; (2) whether the impairment significantly limits the claimant's physical or mental ability to do basic work activities; (3) whether the impairment matches or equals a listed impairment and thus warrants an award of benefits without further analysis; (4) whether the claimant can perform his past work; and (5) whether the claimant can perform other substantial gainful work in the national economy. 20 C.F.R. § 416.920 (1997).

where evidence before ALJ is insufficient to make benefits determination).

Pursuant to these requirements, "an administrative law judge ... must obtain an updated medical opinion from a medical expert ... [w]hen no additional medical evidence is received, but in the opinion of the [ALJ] ... the symptoms, signs, and laboratory findings reported in the case record suggest a judgment of equivalence may be reasonable." *Todd v. Apfel,* 8 F.Supp.2d 747, 755 (W.D.Tenn.1998) (quoting SSR 96–6p, 1996 WL 374180 (S.S.A.), July 2, 1996) (internal quotation marks omitted). *See also,* 20 C.F.R. § 404.1512(b)(6) (discussing ability of ALJ to seek expert medical opinions regarding claimant's condition). Where the record as it exists at the time of the administrative hearing fairly raises the question of whether a claimant's impairment is equivalent to a listing, a medical expert should evaluate it. *Honeysucker v. Bowen,* 649 F.Supp. 1155, 1158 (N.D.Ill.1986) (citing *Jennings v. Secretary,* 770 F.2d 747, 748 (8th Cir.1985)). Consequently, while plaintiff bears the burden of proving that he is eligible for benefits, the ALJ has the duty to ensure that the evidence is sufficient to make the benefits determination. *Hughes v. Apfel,* 992 F.Supp. 243, 246 (W.D.N.Y.1997).

## V. ANALYSIS

Plaintiff's principal contention is that the ALJ failed to develop the evidence of his orthopedic condition which he maintains meets the requirements of Listing 1.05(C). Such a finding at the third step of the five step analysis used by the ALJ would warrant the award of the benefits at issue in this case.[4]

Listing 1.05(C) requires that an SSI claimant have a vertebrogenic disorder which has persisted for at least three months despite prescribed therapy and is expected to last twelve months. The vertebrogenic disorder will be deemed disabling upon repeated findings, *see* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00B, of "[p]lain, muscle spasm, and significant limitation of motion in the spine," as well as "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." *Id.* § 1.05(C). *See also, Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir.1994) (describing requirements of Listing 1.05(C)); *Desimone v. Bowen,* Civ.A.No. 88–8818, 1989 WL 83619, at *3 (E.D.Pa. July 25, 1989) (same). Claiming that a fully developed record would demonstrate that his condition matches or equals these requirements, plaintiff asks the Court to remand his claim for a hearing before a new ALJ.

To determine whether remand is appropriate, the Court must examine the record to determine if the ALJ met her obligation to develop the record adequately. *See Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981) (noting district court's responsibility to scrutinize the entire record and to reverse or remand if decision is not supported by substantial evidence). The medical record before the ALJ contained the following information regarding plaintiff's orthopedic condition:

On November 11, 1991, a magnetic resonance image study ("MRI") was reported by Dr. Steven E. Reznak as revealing disc protrusions compromising the spinal canal, a herniation at L4–5,[5] and abnormality at C4–5.[6] R. at 225–26.

An MRI obtained on June 11, 1992 was reported by Dr. Mark Cooper of Philadelphia Magnetic Imaging as showing prominent disc bulges at C5–6, spurring,[7] narrowing of the thecal sac,[8] but no cervical cord impingement. Encroachment upon nerve roots exiting the neural foramina[9] at the C5–6 level was also reported. R. at 339.

---

4. See Note 3, *supra.*

5. The gap between the fourth and fifth vertebrae of the lumbral spine (lower back).

6. The gap between the fourth and fifth vertebrae of the cervical spine (upper back).

7. Bony growths projecting from the vertebrae. Dorland's Illustrated Medical Dictionary 1242 (26th ed.1985).

8. The case enclosing the spinal column. *Id.* at 1354.

9. Nerve openings in a particular area. *Id.* at 517–18.

An MRI obtained on April 6, 1993 and reported by Dr. Cynthia Miller revealed small central disc protrusions at L4–5 and L5–S1. R. at 322. The study also showed that plaintiff's degenerative disc disease had worsened since the 1991 MRI. *Id.*

An electromyogram [10] and multiple nerve conduction studies conducted by Dr. James Bonner at the Saint Agnes Medical Center on December 8, 1993 confirmed the worsening of plaintiff's degenerative lumbar disc disease. R. at 308–327. Dr. Bonner made a diagnosis of ischemic neuropathy [11] with superimposed L5 radiculopathy, and opined that the disc disease caused impingement of the nerve controlling the back and foot at the L5 vertebrae in the lower back. *Id.* According to Dr. Bonner, this resulted in peroneal foot drop, a condition which results from damage to the nerve connections to the foot and causes the foot to drop straight to the ground when the leg is raised, making walking awkward. *Id.* To correct this problem, a molded ankle-foot orthotic ("MAFO") was prescribed for plaintiff. It holds his foot in place, allowing him to walk more easily but causing discomfort. R. at 97–98. It is this device which the ALJ and Judge Rapoport cited as evidence that plaintiff's foot drop was correctable and thus not disabling.

1995 x-rays disclosed degenerative arthritis in the back and knees and loss of disc height with bony growths, reducing the intervertebral opening in the cervical spine. R. at 395–96. The x-rays also showed arthritic osteophytes [12] forming at the fourth, fifth and sixth vertebrae in the cervical spine. *Id.*

An examination conducted by Dr. John P. Salvo of Philadelphia Orthopaedic Associates on January 16, 1995 revealed a 50% loss in range of motion in plaintiff's lower back and a 25% loss in range of motion in his upper back. R. at 492.

In addition to his orthopedic injuries, plaintiff has a history of cardiac illness. Although plaintiff has recovered from his 1992 heart surgery, Dr. Salvo noted that the surgery complicated his recovery from his orthopedic injuries. R. at 492.

■ Turning to plaintiff's Objections to the Report and Recommendation, the Court finds that plaintiff sought medical treatment after 1994, contrary to the ALJ's determination. The ALJ's determination that plaintiff's complaints of pain were not credible because plaintiff used only non-prescription drugs to treat himself was permissible. Similarly, the ALJ's dismissal of the opinion of Dr. Pettineo was not inappropriate because the record establishes that Dr. Pettineo examined plaintiff only once. Moreover, the ALJ's decision to give Dr. Pettineo's opinion no weight is not of any particular significance because plaintiff's primary claim is orthopedic in nature and Dr. Pettineo evaluated only plaintiff's cardiac condition.

■ Of more significance is plaintiff's contention that there was insufficient development of the record regarding his orthopedic problems. As noted above, plaintiff submits that his condition matches Listing 1.05(C), which requires, *inter alia*, evidence of "[p]ain, muscle spasm, and significant limitation of motion in the spine," as well as "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.05(C). The evidence of his orthopedic condition presented at the hearing does not support a determination that his condition matches Listing 1.05(C), but the Court concludes that it "fairly raises the question of whether [plaintiff]'s impairment is equivalent to [Listing 1.05(C)]," and thus the ALJ should have called an orthopedic expert to evaluate plaintiff's condition. *Honeysucker,* 649 F.Supp. at 1158.

The ALJ did not receive any testimony from an orthopedist on the extent plaintiff's orthopedic injuries. The only medical testimony presented at the administrative hearing was provided by Dr. Rothkopf, a cardiologist, who repeatedly limited his testimony to the plaintiff's heart condition. R. at 101, 104,

---

**10.** A recording of the intrinsic electrical properties of skeletal muscle used to determine, *inter alia,* reflex loss and associated neuromuscular dysfunction. *Id.* at 427.

**11.** Deficient blood flow to the nervous system. *Id.* at 681, 888.

**12.** Bony outgrowths. *Id.* at 943.

105. When asked about plaintiff's orthopedic condition, Dr. Rothkopf gave only a general response without specifically testifying about plaintiff's orthopedic condition.[13] R. at 102–03.

The Court concludes that the evidence of plaintiff's orthopedic injuries fairly raises the question of whether plaintiff is disabled within the meaning of Listing 1.05(C). The ALJ's failure to determine the extent of plaintiff's orthopedic injuries was a failure to fulfill her duty to develop the record under 20 C.F.R. § 404.1512(d)–(f). *Honeysucker*, 649 F.Supp. at 1158. Thus, the Court must vacate the ALJ's decision to deny benefits and remand the case for further development of the record.[14]

The final matter for the Court to resolve is plaintiff's request that his case be remanded to a different ALJ. As a general matter, courts have held that whether a case is remanded to a different ALJ is a decision for the Commissioner to make. *See Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir.1993) (discussing judicial reluctance to dictate procedures of administrative agencies). However, courts will grant such a request where it appears that the impartiality of the ALJ is a concern. *See, e.g., Ventura*, 55 F.3d at 904–05 (3d Cir.1995) (remanding to different ALJ after previous proceeding was not conducted impartially).

■ In the case at bar, there is nothing in the record to suggest that the ALJ was biased against plaintiff, or that the ALJ was anything but impartial. Thus, the Court concludes that remand to a different ALJ is unnecessary, and plaintiff's request for such a remand is denied.

13. When Dr. Rothkopf was asked by the ALJ to describe an aspect of plaintiff's orthopedic condition, he replied:

So the bottom line is but while the other things [plaintiff's spinal injuries, as opposed to his foot drop] you can quantitate [*sic*] and say well, there is some disk [*sic*] protrusion, that doesn't give you must [*sic*] in the way of information about pain or disability because about 20 percent of so-called normal people off the street, when you ask them to have an MRI

## VI. CONCLUSION

For the reasons stated above, the Court vacates the decision of the ALJ, denies summary judgment to both parties, and remands the case for proceedings consistent with this Memorandum. An appropriate order follows.

for a scientific study have disk protrusions and these are 20 percent of asymptomatic people. So that simply having a finding of disk protrusion or disk herniation doesn't really tell you the symptoms.

R. at 102.

14. Because the Court finds that the ALJ did not meet her regulatory obligation to develop a complete record, the Court need not reach plaintiff's other claims of factual and legal error.