**Michael A. GORECKI, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security,[1] Defendant.**

**No. 3:CV–99–0892.**

United States District Court,
M.D. Pennsylvania.

Aug. 31, 2001.

---

**1.** Petitioner originally brought this action against Kenneth S. Apfel. Larry G. Massanari became the Acting Commissioner of Social Security on March 29, 2001. Under Fed. R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), Larry G. Massanari is automatically substituted for Kenneth S. Apfel as the defendant.

**156**

Steven Michael Rollins, Rollins Law Office, Middletown, PA, for plaintiff.

Barbara Kosik Whitaker, Assist. U.S. Atty., Scranton, PA, for defendant.

### *MEMORANDUM*

CAPUTO, District Judge.

Plaintiff brought this action on June 3, 1999 claiming the Social Security Administration's denial of supplemental security income under Title XVI of the Social Security Act, was not supported by substantial evidence. (Compl., Doc. 1.) Plaintiff filed his motion for summary judgment on December 15, 1999. (Doc. 11.) Defendant filed its motion for summary judgment and a brief in support on February 14, 2000. (Doc. 14.) Magistrate Judge Thomas M. Blewitt filed his Report and Recommendation on August 15, 2000 recommending that Plaintiff's motion be denied and Defendant's motion be granted. ("R. & R." or "Report", Doc. 16.) Plaintiff timely filed objections to the Report, (Pl.'s Objections to the R. & R., Doc. 17) to which Defendant responded on September 11, 2000. (Def.'s Response to Pl.'s Objections to the R. & R. by the Magistrate Judge, Doc. 18.) Because I find that the determination of the Administrative Law Judge (ALJ) was inconsistent with settled law, the report and recommendation of Magistrate Judge Blewitt will be adopted in part and not adopted in part.

## BACKGROUND

Plaintiff filed an application for Supplemental Security Income (SSI) on October 5, 1995 claiming that he was unable to work since January 23, 1994 due to his disability from arthritis or tendonitis of the left shoulder, degenerative joint disease of the left knee, borderline intellectual functioning, degenerative disc disease of the lumbar and cervical spine, and thoracic spondylosis. His application was denied initially as well as on reconsideration. (R. 102–04.) A hearing was requested and held on May 29, 1997 before Administrative Law Judge ("ALJ") Theodore Burock. The ALJ denied Plaintiff's benefits on January 23, 1998, having found the following, (R. 11–22):

1. The claimant has not engaged in substantial gainful activity at any time relevant to [the ALJ's] decision.

2. The medical evidence establishes that the claimant has severe impairments consisting of borderline intellectual functioning, degenerative disc disease of the lumbar and cervical spine, and thoracic spondylosis, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant is not fully credible regarding his subjective complaints and their effect on his ability to engage in substantial gainful activity.

4. The claimant has a residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) which allows for a sit/stand option and which is limited to routine, repetitive tasks.

5. The claimant is precluded from the performance of his past relevant work as a custodian.

6. The claimant at all times relevant to [the ALJ's] decision is a "younger individual".

7. The claimant has a marginal education.

8. In view of the claimant's age, transferability of work skills is not an issue material to [the ALJ's] decision.

9. In evaluating the claimant under the framework of the Vocational Regulations and Section 416.969 and Rule 202.17 of Table No. 2, Appendix 2, Subpart P, Regulations No. 4 and the provisions of SSR 83–14, a finding of not disabled is appropriate.

10. The claimant is not disabled at any time through the date of [the ALJ's] decision (20 CFR 416.920(f)).

(R. 20–21.)

Thereafter, Plaintiff timely requested review of the decision of the Administrative Law Judge by the Appeals Council. (R. 8–10.) The Appeals Council denied Plaintiff's request. (R. 5–6.) The decision of the Administrative Law Judge became the final decision, *see Rankin v. Heckler,* 761 F.2d 936, 941 (3d Cir.1985), which is the subject of this appeal presently before the Court.

## STANDARD OF REVIEW

■■ A magistrate judge's finding or ruling on a motion or issue should become that of the court unless a specific objection is filed within the prescribed time. *See Thomas v. Arn,* 474 U.S. 140, 150–53, 106 S.Ct. 466, 472–74, 88 L.Ed.2d 435 (1985). However, where, as here, objections to the magistrate judge's report are filed, the district court must conduct a *de novo* review of the contested portions of the report, *see Sample v. Diecks,* 885 F.2d 1099, 1106 n. 3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided the objections are both timely and specific, *see Goney v. Clark,* 749 F.2d 5, 6–7 (3d Cir.1984). In

making its *de novo* review, the district court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1); *Owens v. Beard,* 829 F.Supp. 736, 738 (M.D.Pa.1993) (McClure, J.). Although the review is *de novo,* the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2413, 65 L.Ed.2d 424 (1980); *Goney v. Clark,* 749 F.2d 5, 7 (3d Cir.1984); *Ball v. U.S. Parole Comm'n,* 849 F.Supp. 328, 330 (M.D.Pa.1994) (Kosik, J.).

As the court's review of the magistrate judge's report is *de novo,* the court will review the ALJ's findings and conclusions under the substantial evidence standard. *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir.2001). Substantial evidence is more than a mere scintilla but less than a preponderance, and has been defined as such evidence as a reasonable person would accept as adequate to support a conclusion. *Id.; Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir.1986). "Substantial evidence is such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981) (citing *Lewis v. Califano,* 616 F.2d 73, 76 (3d Cir.1980); 42 U.S.C. § 405(g)). Substantial evidence has also been described as enough evidence to withstand a directed verdict motion where the disputed proposition is one of fact for the jury. *See NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939); *Olsen v. Schweiker,* 703 F.2d 751, 753 (3d Cir.1983).

Further, as the Third Circuit has explained:

Our decisions make clear that determination *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [agency] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians).

*Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983) (citations omitted). So far as the ALJ's findings are supported by substantial evidence, those findings are binding on this court. *Fargnoli,* 247 F.3d at 38.

## DISCUSSION

Title II of the Social Security Act provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D); *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290, 96 L.Ed.2d 119 (1987). An applicant for benefits is disabled under the Act if there is a " 'medically determinable basis for an impairment that prevents him from engaging in any "substantial gainful activity" for a statutory twelve-month period.' " *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999) (quoting *Stunkard v. Sec. Health & Human Servs.,* 841 F.2d 57, 59 (3d Cir.1988)). The Social Security Administration utilizes a five-step process to determine whether or not a claimant is disabled:

(1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled;

(4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment—if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's age, education, and past work experience to determine whether she can perform other work which exists in the national economy. *See id.* § 404.1520(b)-(f).

*Schaudeck v. Commissioner of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir.1999). The burden of proof is on the claimant during the first four stages of the process and on the Commissioner during the fifth stage. *See Bowen,* 482 U.S. at 146 n. 5, 107 S.Ct. at 2294 n. 5. At this fifth stage, in order to deny a claim of disability, the Commissioner must demonstrate that the claimant is capable of performing other available work. *Fargnoli,* 247 F.3d at 39.

Plaintiff advances four independent reasons for objecting to Magistrate Judge Blewitt's R. & R. First, Plaintiff claims that the ALJ may not ignore or fail to make a credibility finding for a witness who testifies at a hearing. (Doc. 17 at 1.) Plaintiff's second and third arguments claim that the ALJ improperly evaluated his mental and physical impairments, respectively. (*Id.* at 3, 6.) Finally, Plaintiff claims that the ALJ erred by relying upon the testimony of the vocational expert. (*Id.* at 7.)

**A. Credibility Determination**

With respect to Plaintiff's first objection, Plaintiff argues that the ALJ failed to make a credibility determination or address the testimony of Plaintiff's witness, Ms. Teresa A. Flanger. (Doc. 17 at 1.) At the hearing, Ms. Flanger testified that she knew the Plaintiff for nine to ten years and saw him almost everyday. (R. 60–61.) She also testified that she helped to bathe the Plaintiff "every couple months when his back would happen to go out," (R. 60); "[took] care of the house when his back [was] very bad," (*Id.* 61); helped him pay bills "... as far as writing checks," (*Id.*); and that Plaintiff complained of pain in his neck, legs and shoulder, (*Id.* 60). The ALJ did not specifically address Ms. Flanger's testimony anywhere in his decision.

While the ALJ may accept some evidence and reject other evidence, he must explicitly weigh all relevant, probative and available evidence before him, and provide some explanation for a rejection of probative evidence which would suggest a contrary conclusion. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir.1994). Although the ALJ need not discuss all evidence presented, lay testimony as to a claimant's symptoms is competent evidence which the ALJ must take into account unless he expressly determines to disregard such testimony, in which case, he must give reasons germane to each witness. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir.1983) (ALJ is expected to state that he found witness not credible before wholly disregarding his testimony); *see Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir.1996). The Third Circuit recently held that where the ALJ makes a credibility determination regarding the plaintiff, it is expected that the ALJ address the testimony of additional witnesses who are offered to bolster or corroborate the plaintiff's own testimony. *Burnett v. Commissioner of Soc. Sec. Admin.,* 220 F.3d 112, 122 (3d Cir.2000) (remanding matter to ALJ to address testimony of additional witnesses).

In this case, the ALJ considered Plaintiff's own testimony but chose not to find Plaintiff fully credible regarding the extent or severity of his disability or its

effect on his ability to perform substantial gainful activity. (R. 17). Furthermore, the ALJ afforded limited weight to the conclusions of Dr. Goodman and other physicians treating or examining Plaintiff. (R. 18). In doing so, the ALJ failed to explicitly discuss the impact of Ms. Flanger's testimony on his decision not to find the Plaintiff fully credible. Because Ms. Flanger's testimony is consistent with Plaintiff's testimony and medical reports of Plaintiff's physicians, her testimony is competent evidence that the ALJ must address in his decision. The ALJ's failure to discuss the weight he gave her testimony is reversible error and must be discussed on remand. *Burnett,* 220 F.3d at 122. Defendant only offers precedent from other circuits which is contrary to the Third Circuit's recent decision in *Burnett.* *See Harrell v. Bowen,* 862 F.2d 471, 482 (5th Cir.1988) (noting that observations of individual, particularly lay person, may be affected by sympathy for relative or friend and influenced by exaggeration of limitations); *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir.1984) (rejecting lay testimony because it is not equivalent to "medically acceptable ... diagnostic techniques" and conflicted with available medical evidence); *Lorenzen v. Chater,* 71 F.3d 316, 319 (8th Cir.1995) (although ALJ failed to list specific reasons for rejecting lay testimony, court found testimony had been discredited). As a result, I disagree with Magistrate Judge Blewitt's finding that the ALJ did not err in failing to evaluate the testimony of Ms. Flanger.

## B. Step Three: Mental Impairment

Second, Plaintiff objects because the ALJ's decision in determining Plaintiff's mental impairments was inconsistent. (Doc. 17 at 3–4.) In particular, the ALJ had found that Plaintiff's mental impairment was "severe," but in completing the "B" criteria of the Psychiatric Review Technique Form ("PRTF"), *i.e.,* the four areas of mental functioning that show the impact of a mental impairment on the ability to work, the ALJ indicated that there were no specific limitations, or that the mental impairment was non-severe. Plaintiff also argues that there is no substantial evidence to support the ALJ's evaluation of Plaintiff's mental impairment. (Doc. 17 at 3.) In particular, Plaintiff contends that the ALJ failed to adequately explain why Listing 12.05(C) did not apply to Plaintiff's case. (*Id.* at 4.)

### 1. Substantial Evidence

█ In determining whether an impairment is severe, step two of the five step analysis does not look to the specific Listing of Impairments; it only asks whether the impairment or combination of impairments causes more than minimal restrictions on the capacity for basic work activity. 20 C.F.R. 416.920. This step requires a *de minimis* showing of impairment. *Hinkle v. Apfel,* 132 F.3d 1349, 1351 (10th Cir.1997). Step two was designed to identify "at an early stage" claimants with such slight impairments that they would be unlikely to be found disabled even if age, education, and experience were considered. *Id.* Thus, the step two "severity" criteria requires only a *de minimis* showing of impairment. A complete analysis of whether the person qualifies for disability is not complete at this point. Upon a *de minimis* showing of impairment, the evaluation proceeds to step three, at which point a thorough evaluation is conducted to determine if the claimant meets the criteria for the Listing of Impairments. At this point, more than a *de minimis* showing is necessary to qualify for disability. Inconsistencies between step two and three may occur, *e.g.,* where a finding that a severe impairment does not fall within the criteria of the Listing of Impairments.

The regulations require the agency to complete a "standard document," *see* 20 C.F.R. § 404.1520a(d), such as a PRTF, which is essentially a checklist that tracks the requirements of the Listings of Mental Disorders. *Id.* at Pt. 404, Subpt. P, App. 1, § 12 (1987); *Portlock v. Apfel,* 150 F.Supp.2d 659, 671 (D.Del.2001). This form is required at all adjudicative levels. *Plummer,* 186 F.3d at 429. The regulations permit the ALJ to complete the form (i) without the assistance of a medical adviser, (ii) by calling a medical advisor to assist in preparing the document or (iii) by remanding the case where there is new evidence or where the issue of a mental impairment arises for the first time. 20 C.F.R. § 404.1520a(d)(1)(i)—(iii).

I also note the importance of the PRTF. "[T]here must be competent evidence in the record to support the conclusions recorded on the form and the ALJ must discuss in his opinion the evidence that he considered in reaching the conclusions expressed on the form." *Portlock,* 150 F.Supp.2d at 671 (citing 20 C.F.R. § 404.1520a(c)(4); and *Plummer,* 186 F.3d at 433 (stating that in completing PRTF, "ALJ has a duty to consider all evidence of impairments in the record")). The Third Circuit recently held that the ALJ must set forth the reasons for his decision. In *Burnett,* the ALJ provided a summary conclusion that the claimant's impairments did not meet or equal any Listed impairment which, according to the Third Circuit was "beyond meaningful judicial review." 220 F.3d at 119.

In this case, the ALJ did not fully explain his findings. Under step two of the five step analysis, the ALJ decided that the Plaintiff did have severe impairments that would significantly affect his ability to engage in basic work-related functions, finding that Plaintiff has confirmed borderline intellectual functioning. (R. 16,

21.) In evaluating Plaintiff's mental impairments under step three, the ALJ found that the impairments did not meet or equal the listed criteria contained in § 12.05(C). (R. 16.) The ALJ never stated anywhere in his report why Plaintiff did not meet the Listing requirements. At best, the ALJ explained that

under the "B" criteria the claimant has not demonstrated any restriction of activities of daily living or difficulties in maintaining social functioning, concentrating or persisting at a task or decompensation in work or work-like settings. The undersigned notes that the claimant has been functioning at this level since his early school days (Exhibit 19) and really demonstrated no significant limitations which precluded him from performing work activity for an extended period of time. It was not until the claimant suffered a back injury that he stopped working, thereby suggesting that his limited intellectual functioning did not have a direct bearing on his ability to work on a full time basis.

Although the ALJ did state that he considered the 1992 report of Dr. Bowers establishing Plaintiff's I.Q. scores and gave it little weight, (*see* R. 19), he does not provide much support for his findings, but cites only to an exhibit of Plaintiff's elementary and high school records. The ALJ does not cite any other medical evidence. Although the ALJ provides a detailed explanation of Plaintiff's physical impairments, he gives short shrift to Plaintiff's mental impairments.

Magistrate Judge Blewitt relies upon Defendant's brief noting that the ALJ also considered the reports of three state agency psychologists who reviewed Plaintiff's medical records and found that his borderline intellectual functioning did not meet or equal a listed impairment. (*See* Doc. 16, at 7 (relying on R. 232, 269, 294).) However,

reviewing the ALJ's report and findings, I do not find anywhere in the ALJ's report that the ALJ did, in fact, rely upon these records. Defendant argues that even if the ALJ had not cited listing 12.05 in his decision, the Court could deduce that the ALJ had considered whether Plaintiff's borderline intellectual functioning met or equaled listing 12.05. (Doc. 18 at 3.) Without a developed record, the Court is not prepared to deduce anything.

It is difficult to determine the ALJ's step three ruling with respect to Plaintiff's mental impairments based upon the evidence and the ALJ's lack of explanation and support. As a result, the Court finds that the ALJ's determination as well as his evaluation in the PRTF is not supported by substantial evidence and the ALJ should develop the record more fully, discuss the evidence and explain his reasoning as to why Plaintiff's "severe" impairment does not meet or is not equivalent to a listed impairment.

### 2. Margin of Error for I.Q. Scores

■ An applicant claiming disability due to mental retardation must demonstrate "a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22)." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.05. "The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *Id.* Subsection A and B are inapplicable here. Subsection C requires a two prong analysis where Plaintiff must demonstrate a "valid verbal, performance, or full scale IQ of 60 through 70 [2] and a physical or other mental impairment imposing additional and significant workrelated limitation of function." *Id.*

Plaintiff must prove both that he has an I.Q. within the requisite range and that he has an impairment imposing additional limitations in order to meet his burden. *See Bendt v. Chater*, 940 F.Supp. 1427, 1430 (S.D.Iowa 1996) (citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)).

■ Plaintiff argues that he has met the first prong. In this case, the record shows Plaintiff has a full scale I.Q. of 76, a verbal I.Q. of 72, and a performance I.Q. of 81. (R. 16, Ex. 35.) Therefore, all of the Plaintiff's I.Q. scores fall outside the 60 to 70 range of the § 12.05(C) test. However, Plaintiff argues that I.Q. scores have a five-point margin of error, and contends that giving Plaintiff the benefit of the margin of error is consistent with the regulations which require that the lowest I.Q. score be used. (Doc. 17 at 5.) *See Hampton v. Apfel*, No. Civ.A. 97–6651, 1999 WL 46614 (E.D.Pa. Jan.6, 1999) (it is reasonable to err on the side of the claimant for the purpose of determining whether a mental disorder exists). Applying this margin of error to Plaintiff's verbal I.Q. score of 72 gives Plaintiff a minimum I.Q. score of 67 which places him within the range of 12.05(C).

The Third Circuit has not determined whether standard errors of measurement should be applied to an individual's I.Q. score. In addition, the district courts of the Third Circuit are split over the issue. *See Ferguson v. Massanari*, No. CIV. A. 99–839–GMS, 2001 WL 902207, at *7 (D.Del. July 31, 2001) (collecting cases) (declining to determine issue); *Hampton*, 1999 WL 46614, at *2 (incorporating five point margin of error); *Halsted v. Shalala*, 862 F.Supp. 86, 89–90 (W.D.Pa.1994) (ap-

---

2. The regulations require that where verbal, performance and full-scale I.Q. scores are provided, the lowest I.Q. score be used to determine if the plaintiff is intellectually impaired. 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(c).

plying five point margin of error and finding that I.Q. of 74 was within range of § 12.05(C)); *see also Young v. Shalala,* No. 94–3011–CV–S–5, 1995 WL 904826 (W.D.Mo. May 31, 1995) (finding that I.Q. of 71 was within range of § 12.05(C)); *but see Williams v. Apfel,* No. 99–039–SLR, 2000 WL 376390, at *12 (D.Del. Mar.30, 2000) (collecting cases) (refusing to account for margin of error); *Colavito v. Apfel,* 75 F.Supp.2d 385, 403 (E.D.Pa.1999) (finding that I.Q. score of 72 was not within the range of § 12.05(C)). I also recognize that most courts including the circuit courts in the Seventh, Eighth, and Tenth Circuits have refused to adjust I.Q. scores downward to account for the margin of error. *See Anderson v. Sullivan,* 925 F.2d 220, 222 (7th Cir.1991) (standard error range should not be factored into I.Q. score); *Ellison v. Sullivan,* 929 F.2d 534 (10th Cir.1990) (holding that claimant's score of 72 was not within the range of § 12.05(C)); *Cockerham v. Sullivan,* 895 F.2d 492, 495 (8th Cir.1990) (holding that ALJ's finding that claimant's score of 71 was not within range of § 12.05(C)); *see also Lawson v. Apfel,* 46 F.Supp.2d 941, 946–47 (W.D.Mo.1998) (finding that I.Q. score of 72 was not within range of § 12.05(C)); *Bendt,* 940 F.Supp. at 1431 (finding that I.Q. of 75 was not within range of § 12.05(C)).

As the Third Circuit has not weighed in on the issue, I am not bound by these decisions and declines to follow these cases which reject application of the margin of error. Since I.Q. scores are an inexact measurement of intelligence, errors of measurement should be accounted for in evaluating the claimant's impairment. *See Hampton,* 1999 WL 46614, at *3 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 39, 47 (4th ed.1994); SOCIAL SECURITY ADMINISTRATION, PROGRAM OPERATIONS MANUAL SYSTEM § DI 24515.056D.2); *Halsted,* 862 F.Supp. at 90 (citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 28 (3d ed. rev.1987)). I find the decisions in *Hampton* and *Halsted* persuasive on this issue.

In *Halsted,* the court relied upon the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS in finding that I.Q. scores are thought to have an error of measurement of approximately five points. The court in *Hampton,* 1999 WL 46614 (E.D.Pa.1999) reached the same conclusion but through a slightly different process. The parties in *Hampton* did not dispute that I.Q. tests have a margin of error of five points. *Hampton,* 1999 WL 46614 at *3. Thus, while the court in *Hampton* applied the margin of error of five points to I.Q. scores, it did not specifically rule on whether it is proper to incorporate a five point measurement error into a claimant's I.Q. test results.

Relying on *Halsted* and *Hampton,* I therefore find that I.Q. scores have an error of measurement of approximately five points and thus disagree with the finding of the Magistrate Judge that the Plaintiff's I.Q. scores are not low enough to satisfy the criteria listed in the first prong of § 12.05(C). In this case, Plaintiff's lowest I.Q. score was 72; Plaintiff's range for his I.Q. score will be 67 to 77, placing his score within the range set forth under § 12.05(C) and satisfying the requirement under the first prong. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05(C).

Plaintiff must still meet the requirements of the second prong and demonstrate that mental retardation is accompanied by "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). The Third Circuit has not determined what constitutes "a physical or other mental impairment im-

posing additional and significant work-related limitations of function." *See, e.g., Hampton,* 1999 WL 46614, at *3. However, several other courts including the Eastern District of Pennsylvania, have addressed the issue. *Id.* The Tenth Circuit considered the issue in *Hinkle v. Apfel,* 132 F.3d 1349, (10th Cir.1997), holding that:

> Significant limitation should closely parallel the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two. Needless to say, a claimant's inability to perform his past relevant work would meet the second prong of § 12.05C. We hold only that the analysis the ALJ engages in should parallel step two of the five-step analysis and, thus, does not require that the claimant cannot perform his past relevant work.

*Id.* at 1352; *see also Baneky v. Apfel,* 997 F.Supp. 543, 546 (S.D.N.Y.1998) (holding "that the correct standard for determining whether an 'additional' impairment imposes a 'significant' work-related limitation under Section 12.05C is the 'severity' test [3] employed by the First, Eighth, and Tenth circuit"); *Branham v. Heckler,* 775 F.2d 1271, 1273 (4th Cir.1985) (holding "the fact that a claimant could not do his past relevant work alone established the other, significant work-related limitation of function required by the regulation"); *Sird v. Chater,* 105 F.3d 401, 403 (8th Cir.1997) (holding that "additional and significant limitation of function" requirement met when claimant has physical or additional mental impairment "that has a more than slight or minimal effect on his ability to perform work") (internal citations and quotation marks omitted); *Nieves v. Secretary of Health & Human Servs.,* 775 F.2d 12, 14 (1st Cir.1985) (holding "[a]n impairment imposes significant limitations when its effect on a claimant's ability to perform basic work activities is more than slight or minimal"). The Eastern District of Pennsylvania addressed the issue in *Hampton* holding that "the majority of circuits to have addressed this issue, then, have held that any more than minimal effect on a claimant's ability to work constitutes a significant limitation, and thereby fulfills the second part of § 12.05C requirements." *Hampton,* 1999 WL 46614 at *3. Thus, the Court must turn to whether there is substantial evidence to support the ALJ's determination that the Plaintiff's impairments do not present any more than a minimal effect on his ability to work. In this case, as stated above, the ALJ did not fully consider and explain his findings with respect to Plaintiff's mental impairments.

### 3. Developing the Record

Plaintiff also argues that if the ALJ believed that the record was insufficient to address the intellectual impairment, "the ALJ was duty-bound to order a consultative examination to develop the record." (Doc. 17 at 6.) Defendant cites 20 C.F.R. § 416.919 *et. seq.* Although it is true that the ALJ must develop the record fully before rendering a decision, there is nothing to suggest that "the ALJ is duty-bound to order a consultative examination." The regulations clearly set forth the instances where a consultative examination will be ordered and used and this case does not fall within the purview of the regulations. 20 C.F.R. § 416.919a.

In *Maniaci v. Apfel,* 27 F.Supp.2d 554, 557 (E.D.Pa.1998) which Plaintiff relies,

---

**3.** The "severity" test applied by these circuits parallels the language of step-two of the five step analysis which considers whether the claimant has a *severe* impairment or combination of impairments which causes more than minimal restrictions on the capacity for basic work activity. 20 C.F.R. 416.920

Judge DuBois held that the ALJ did not fulfill her duty to develop the record. Although the plaintiff suffered from an orthopedic condition, no evidence of his orthopedic condition was presented at the hearing. *Id.* The only medical testimony presented was from a cardiologist who gave a general response regarding the plaintiff's orthopedic condition. *Id.*

The facts of this case is distinguishable from *Maniaci.* Here, three state agency psychologists reviewed Plaintiff's medical records and made determinations regarding his intellectual impairment. Testimony from Plaintiff's own physicians was also offered. As a result, Plaintiff has not advanced any argument or explanation why an additional consultative examination is necessary in this matter.

### C. "Controlling Weight"

■ Third, I will address Plaintiff's contention that the ALJ failed to give appropriate weight to Plaintiff's treating physicians Dr. Nasuti, Dr. Hodge, and Dr. Goodman. (Doc. 17 at 7.) A treating physician's medical opinion is granted "controlling weight" with regard to a plaintiff's impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the individual's case record. 20 C.F.R. § 404.1572(d)(2); *Fargnoli,* 247 F.3d at 43; *Adorno,* 40 F.3d at 47 ("greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant."). This does not mean, however, that the treating physician's opinion is automatically dispositive of the issue. *Adorno,* 40 F.3d at 47–48. It simply means that the

ALJ, before rejecting the treating physician's opinion, must consider the competing reports in light of all the evidence medical and non-medical in the case and give a reason for rejecting that evidence. *Fargnoli,* 247 F.3d at 43; *Burnett,* 220 F.3d at 121; *Adorno,* 40 F.3d at 48. *See also Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000) (ALJ may not reject treating physician's assessment based on his own credibility judgments, speculation or lay opinion, but only on basis of contradictory medical evidence); *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987) (where conflict is between opinion of treating physician and that of examining physician, opinion of treating physician must be given greater weight unless ALJ sets forth specific, legitimate reasons for doing otherwise). The ALJ cannot reject the evidence for "no reason or for the wrong reason." *Morales,* 225 F.3d at 317 (quoting *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir.1993)). In other words, the ALJ has the sole responsibility for determining a claimant's disability status, and is free to reject the physician's opinion when the evidence supports a contrary conclusion. *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir.2000).

■ In the present matter, Plaintiff argues that even though Plaintiff's treating physicians, namely, Drs. Hodge, Nasuti and Goodman, found Plaintiff incapable of working, the ALJ did not accord controlling weight to these physicians' opinions. (Doc. 17 at 7.) However I find that the ALJ did not err in his analysis. In particular, the ALJ afforded significant weight to the records of Plaintiff's treating physician, Dr. Hodge (R. 18),[4] but gave only

---

4. Plaintiff also submits the opinion of Dr. Hodge (Doc. 11 at 14; Doc. 17 at 7; R. 373) stating that Plaintiff can never work again. However, according to Defendant, this opin-

ion was not submitted to the ALJ and cannot be considered on substantial evidence review. *See Jones v. Sullivan,* 954 F.2d 125, 128 (3d Cir.1991). Plaintiff does not dispute this. As

limited weight to Dr. Goodman and Dr. Nasuti's conclusions. The ALJ noted in his decision that he placed significant weight on the objective evidence including the "x-ray of the left knee which showed minimal degenerative changes, and x-rays of the spine which document mild to modest spondylosis and mild to moderate narrowing in the lumbar discs." (R. 18, 363, 316.) In addition, the ALJ also noted the reference to a 1989 MRI of Plaintiff's spine which indicated it was "normal". (R. 18, 214, 309.) The ALJ also relied significantly on the State Agency Physician's Assessments establishing a residual functional capacity for light work activity which the ALJ found to be consistent with the objective medical evidence. (R. 18, 301–08, 335–42.)

The State Agency Physician's Assessments that Plaintiff could no longer work conflicted with the assessments of Plaintiff's treating physicians. In explaining his rationale, the ALJ afforded limited weight to Dr. Goodman's conclusions regarding Plaintiff's residual functional capacity assessment because they were "inconsistent internally when compared to the reports of examinations which document minimal findings from a clinical basis." (R. 18.) The ALJ further stated that "Dr. Goodman's assessments are inconsistent with the objective evidence." (*Id.*) Likewise, the ALJ noted that Dr. Nasuti's findings and assessments were inconsistent with the "evidence of record, particularly the objective data." (*Id.*) Since the ALJ adequately explained the evidence, his determination is supported by substantial evidence. Therefore, I find that Magistrate Judge Blewitt did not err in his review of the ALJ's findings.

**D. Vocational Expert**

█ Plaintiff's final objection is that the ALJ should not have relied on the vocational expert's testimony because it conflicted with the Dictionary of Occupational Titles ("DOT"). Specifically, when the ALJ asked the vocational expert the hypothetical question regarding what unskilled jobs Plaintiff could perform, the vocational expert responded with examples of jobs in assembly, packaging, inspecting and machine tending. (R. 67.) According to Plaintiff, the assembly and inspecting positions, as identified in the DOT are semi-skilled positions and the packaging position requires reasoning skills which falls outside of Plaintiff's own range. (Doc. 17, at 8.) Finally, the vocational expert identified the machine tending job with a DOT number that does not even exist.

Plaintiff argues that the DOT contradicts every job the vocational expert identified as meeting the ALJ's limitations. According to Plaintiff, where there is a discrepancy between testimony by a vocational expert and information in the DOT, the vocational expert must explain the discrepancy. If he fails to do so, Plaintiff argues, his testimony cannot provide substantial evidence to support a finding that jobs exist. *See Haddock v. Apfel,* 183 F.3d 1225 (10th Cir.1999); *Porch v. Chater,* 115 F.3d 567, 571–72 (8th Cir.1997); *Light v. Commissioner of Soc. Sec. Admin.,* 119 F.3d 789 (9th Cir.1997); *Ginns v. Apfel,* No. C.A. 98–2508, 1998 WL 961385 (E.D.Pa. Dec.14, 1998).

Magistrate Judge Blewitt found that an ALJ may rely solely on the testimony of the vocational expert to establish the existence of jobs which the Plaintiff could perform. In addition, he also held that the ALJ may rely on the testimony of the vocational expert even if it is inconsistent with the job descriptions set forth in the DOT. (Doc. 16, at 10.)

a result, I will not consider Dr. Hodge's opinion.

Defendant argues that the testimony of a vocational expert is controlling notwithstanding contradictory provisions in the DOT. (Doc. 15, at 13.) In addition, Defendant notes that the DOT provides a disclaimer which warns that it is not an exhaustive resource and may not coincide in every respect in all localities or establishments. (*Id.*) Also, the DOT is only one source among others which the Commissioner may take administrative notice as to occupational issues. (*Id.*) Finally, the Defendant argues that the regulations and rulings state that vocational testimony may be needed when determining complex vocational issues. (*Id.* at 14.)

The circuits are split as to how expert vocational testimony should be handled. Defendants and the Magistrate Judge rely on *Conn v. Secretary of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir.1995) arguing that the ALJ may rely on the testimony of the vocational expert even if the testimony is inconsistent with the job descriptions in the DOT. *See also Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999) (agreeing with Sixth Circuit that when vocation expert's testimony conflicts with DOT, vocational expert's testimony "trumps" DOT), *cert. denied*, 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000). Their rationale was that the DOT "is not the sole source of admissible information concerning jobs." *Jones*, 190 F.3d at 1230 (quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994)). On the other hand, the Tenth Circuit held that the ALJ "must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir.1999); *see also Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir.1995);

*Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995).

Defendant cites the Third Circuit decision of *Wright v. Sullivan*, 900 F.2d 675, 684 (3d Cir.1990) arguing that the Third Circuit accepted the vocational expert's testimony despite a conflict with the DOT. In *Wright*, the claimant suggested that her work as a rape counselor could not be considered substantial gainful employment because the job was not listed in the DOT. The Third Circuit held that the DOT was not a comprehensive source and just because the job was not listed in the DOT, did not mean that the job did not exist. *Id.*

In this case, however, the vocational expert did not provide examples of employment which were not listed in the DOT. Instead the vocational expert provided examples of employment which were listed as semi-skilled positions in the DOT when asked for examples of unskilled positions, identifying a DOT number which does not exist and providing positions in reasoning development categories which did not pertain to the hypothetical posed by the ALJ, thereby creating a conflict between his testimony and the DOT. The ALJ should develop the record and explain any conflicts before relying on the vocational expert's testimony in order to meet the substantial evidence standard. *See Burnett*, 220 F.3d at 124–26. Given the Third Circuit's recent decisions in *Fargnoli* and *Burnett* emphasizing the duty of the ALJ to develop the record and to consider all relevant evidence in making his/her determinations, I agree with the Tenth Circuit and holds that the ALJ must develop the record and explain the inconsistencies between the vocational expert's testimony and the DOT further.

## CONCLUSION

In this case, although I find that there was substantial evidence for the ALJ to

give limited weight to Plaintiff's treating physicians, the ALJ's decision not to award disability benefits to Plaintiff was not supported by substantial evidence. First, the testimony of Plaintiff's lay witness corroborated or bolstered the Plaintiff's claim that he was disabled by supporting both Plaintiff's credibility and his physician's conclusions. It is unclear whether or not the witness' testimony was credited or simply ignored because the ALJ failed to expressly give the reasons why he discounted Ms. Flanger's testimony, *Cotter*, 642 F.2d at 705. Because the ALJ failed to resolve a conflict created by countervailing evidence, the ALJ's determination is not supported by substantial evidence. *Grant v. Commissioner, Soc. Sec. Admin.*, 111 F.Supp.2d 556, 569 (M.D.Pa.2000) (Muir, J.).

Second, I find that the ALJ should apply a five point standard error to Plaintiff's I.Q. scores. In addition, the ALJ did not explain his reasoning or provide support with respect to Plaintiff's mental impairments and why he found that Plaintiff did not meet or equal the requirements of the Listing of Impairments under § 12.05(C).

Third, Magistrate Judge Blewitt did not err in failing to give controlling weight to Plaintiff's treating physicians since the ALJ did provide ample support and adequately explained the evidence. As a result, the ALJ's determination was supported by substantial evidence.

Finally, I disagree with Magistrate Judge Blewitt in his finding that the ALJ did not err in relying on the testimony of the vocational expert even though it conflicted with the DOT. Since I rely on the holding of the Tenth Circuit decision in *Haddock*, as well as the Third Circuit's recent decisions in *Fargnoli* and *Burnett*, I hold that the ALJ must develop the record and explain any conflicts between the DOT

and the testimony of the vocational expert. As the record reveals error on the part of the ALJ and the magistrate judge, the case will be remanded to the Commissioner for further proceedings consistent with this opinion.

An appropriate order will follow.

### *ORDER*

NOW, this _____ day of August, 2001, IT IS HEREBY ORDERED that:

1. The Report and Recommendation of Magistrate Judge Thomas M. Blewitt (Doc. 10) is **ADOPTED in part and NOT ADOPTED in part.**

2. Plaintiff's Motion for Summary Judgment (Doc. 11) is **DENIED.**

3. Defendant's Motion for Summary Judgment (Doc. 14) is **DENIED.**

4. This matter is **REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

5. The Commissioner shall hold another disability benefits hearing and shall reconsider steps three through five (3-5) of the disability determination process consistent with this Memorandum and Order.

6. The Clerk of Court is directed to close this case.